ADRIAN F. SHERMAN, *as Trustee, etc.*, v. M. M. LUCKHARDT.

**No. 12,643.** ( 70 Pac. 702.)

SYLLABUS BY THE COURT.

BANKRUPTCY—*Preferential Payment.*  A preferential payment by a debtor to one of his creditors, within four months prior to the former's bankruptcy, is not void under clause *b*, section 60, and clause *e*, section 67 (30 U. S. Stat. at L., ch. 541), of the bankruptcy act of 1898, though made with a fraudulent intent on the debtor's part, if it be accepted by the creditor without knowledge of such intent and without knowledge that a preference was intended.

Error from Morris district court; O. L. MOORE, judge. Opinion filed November 8, 1902. Affirmed.

*George E. Stoker*, and *Rossington, Smith & Histed*, for plaintiff in error.

*Eugene Hagan*, and *J. B. Furry*, for defendant in error.

The opinion of the court was delivered by

DOSTER, C. J.: Plaintiff in error is the trustee of the estate of William Luckhardt, a bankrupt. He sued to set aside a transfer of real property made by the bankrupt to his wife within four months prior to the institution of the bankruptcy proceedings, on the ground that it was fraudulent and void. The court below made findings of fact. Those material to the question for determination were as follows:

"8. That the said William Luckhardt, in causing the above-described real estate to be conveyed to this defendant, intended thereby to prefer this defendant over his other creditors.

"9. That the said William Luckhardt, in causing the above-described real estate to be deeded to this de-

fendant, intended thereby to hinder, delay and defraud his other creditors.

"10. That the said defendant was not a purchaser of said real estate in good faith and for a present fair consideration."

"12. That upon the trial of this action the counsel for plaintiff admitted that the said William Luckhardt, at the time he caused to be conveyed to the defendant the real estate herein above described, was indebted to the said defendant in the sum of $1500; and that it was further admitted that the said defendant, M. M. Luckhardt, at the time she received and accepted the conveyance of said premises to herself, had no knowledge of the insolvency of her husband, William Luckardt, nor of his intention or purpose to defraud, hinder or delay his creditors in the collection of their debts by means of said conveyance to her of said real estate; that the defendant had no knowledge of the plaintiff's intention to make her a preferred creditor; and that the reasonable value of the real estate conveyed to her was $1500."

Judgment went against the plaintiff, to reverse which he has prosecuted error.

From the foregoing findings, it appears that the defendant in error was not a purchaser of the real estate in question for a present consideration, but that she took it in payment of a preexisting debt; that the conveyance was made with intent on the grantor's part to hinder, delay and defraud his creditors; that it was accepted by the grantee without knowledge of the grantor's purpose to defraud, without knowledge of his intention to give a preference, and without knowledge of his insolvency. Do these facts have the effect to invalidate the conveyance?

Clause $b$ of section 60 of the bankruptcy act of 1898 reads as follows:

"If a bankrupt shall have given a preference within four months before the filing of a petition, or after the

filing of the petition and before the adjudication, and the person receiving it, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person.''

Clause *g* of section 57 reads as follows:

''The claims of creditors who have received preferences shall not be allowed unless such creditors shall surrender their preferences.''

It is evident from the above provisions, without reference to others cognate with them, that preferences by a bankrupt, if accepted without knowledge that they were intended as such, are tolerated by the bankruptcy act, subject, however, to the condition that the one to whom given shall surrender the preference if he would further share in the distribution of the bankrupt's estate. That was the decision of the majority of the supreme court of the United States in *Pirie v. Chicago Title and Trust Company*, 182 U. S. 438, 21 Sup. Ct. 906. However, it is declared by clause *e* of section 67 of the act, as follows:

''That all conveyances, transfers, assignments or encumbrances of his property, or any part thereof, made or given by a person adjudged a bankrupt under the provisions of this act, subsequent to the passage of this act and within four months prior to the filing of the petition, with the intent and purpose on his part to hinder, delay or defraud his creditors, or any of them, shall be null and void as against the creditors of such debtor, except as to purchasers in good faith and for a present fair consideration ; and all property of the debtor conveyed, transferred, assigned or encumbered as aforesaid shall, if he be adjudged a bankrupt, and the same is not exempt from execution and liability for debts by the law of his domicile, be and remain a part of the assets and estate of the bankrupt

and shall pass to his said trustee, whose duty it shall be to recover and reclaim the same by legal proceedings or otherwise for the benefit of the creditors. . . ."

The above-quoted section must be viewed, of course, in connection with those which allow the making of preferences, because they are part of the same act and related to the same subject, to wit, conveyances or other transfers of the debtor's property. However, notwithstanding they are *in pari materia*, we cannot think that the terms of the one last quoted were intended to be inclusive of such preferential conveyances as might be executed with a fraudulent intent on the debtor's part. The giving of a preference by a failing debtor is not, in and of itself, fraudulent. That has been several times decided by this court. (*Arn v. Hoerseman*, 26 Kan. 413 ; *Bishop v. Jones*, 28 id. 680 ; *Voorhis v. Michaelis*, 45 id. 255, 25 Pac. 592 ; *Hasie v. Connor*, 53 id. 713, 37 Pac. 128.) Such we believe to be the general rule, and it would appear from clause *b* of section 60, before quoted, that the act of preference can be regarded as fraudulent only in the event of the creditor's knowledge of his debtor's intent and purpose in performing it. It is not wrong for a creditor to receive payment of his debt from the failing debtor, but it is wrong for him to receive it knowing that to do so would violate the rule of equality between himself and other creditors.

It is, however, urged that, by the terms of clause *e* of section 67, the intent of a debtor in making a conveyance is the test of the validity of the transaction. That section, in our judgment, relates to transfers other than those to creditors. Transfers to creditors had been already provided for by clause *b*, section 60, and by that section such a transfer was validated unless "the person receiving it," "or his agent acting

therein, shall have reasonable cause to believe that it was intended thereby to give a preference." That section, therefore, makes the creditor's knowledge of his debtor's intent the test, because without such knowledge the transaction is not wrong on the creditor's part. Clause *e* of section 67 makes the debtor's intent, "except as to purchasers in good faith and for a present fair consideration," the test, because it is difficult, if not impossible, to conceive of a transfer other than to one of such excepted class of persons, if made with such intent, that could have, as against creditors, any meritorious consideration to support it. Therefore, by that section, the debtor's purpose in making the transfer may well be made the test.

Cases are cited to us by counsel on both sides, but none of them appears to us to bear directly on the point at issue. There is, however, a significant expression in *Pirie v. Chicago Title and Trust Company*, supra, in harmony with the view we have expressed. Mr. Justice McKenna, in delivering the opinion of the majority of the court, argumentatively said of clause *e* of section 67 : "Its purpose being to prohibit the disposition of property by the debtor to persons other than creditors in fraud of the act."

The judgment of the court below is affirmed.

Johnston, Smith, Cunningham, Greene, JJ., concurring.

Burch, J. (dissenting) : I am not prepared to yield assent to the conclusion reached by the majority of the court in this case.

It was an established canon in Blackstone's day that statutes against fraud should be liberally and beneficially expounded. (1 Bla. Com. 88.) In Sutherland on Statutory Construction, section 444, Lord

Mansfield is quoted as saying that "these statutes cannot receive too liberal a construction or be too much extended in suppression of fraud"; and lapse of time has not abated any of the force of the rule. When, therefore, the legislature has set itself to the task of extirpating as far as possible the pernicious effects of fraud in the business relations of men, the court should hesitate to exclude any class of persons or any class of transactions from the operation of the law, if fairly included in its terms.

If the words of the statute (§ 67e) be looked to, the meaning is too obvious for argument. The language is as unmistakable as it is emphatic.

This section names its own transfers, designates its own persons, specifies its own lodgment for the guilty intent, makes its own exceptions, declares its own consequences, and prescribes its own remedy. There is neither uncertainty nor ambiguity in either scope or detail, and if any exceptions to the operation of the law other than the one named had been contemplated they would have been expressed in it. The decision rendered, however, does impose on this act of congress a limitation not discoverable from its terms, and utterly nullifies it so far as an entire class of transferees is concerned.

Nor is this all. Not only is the effect of a remedial statute narrowed and constrained, but the latitude of preferential transfers is enlarged. Preferences, too, are obnoxious to the purposes of the law. They are very grudgingly endured in any case, and are suffered at all only because they rise from an honest endeavor to satisfy just obligations and are free from moral turpitude. But under the opinion of the majority of the court, they actually may be contrived at by a covinous mind. Such a construction ought not to prevail.

Fraud is inherently vicious ; it is the bane and abomination of the business world, and when the law in distinct phrase declares otherwise, it ought not to be permitted actively to control the conduct of a bankrupt in any transaction where either good faith or a present fair consideration is wanting, even if the party dealt with be a creditor. The way would thus be opened to cunning rogues to parcel out their assets to a few favored creditors for the express purpose of defrauding all others, and they would be enabled thereby to defeat entirely the object of the bankruptcy law.

The carefully chosen and unequivocal phraseology of section 67$e$ of the present law is in such sharp contrast with the provisions of the bankruptcy law of 1867, and makes so great an advance on the provisions of that act, that its signification should not be minimized, contracted, or curtailed, especially when by giving their plain meaning to plain words the fundamental purposes of the law are better subserved.

I am authorized to say that Chief Justice DOSTER and Mr. Justice POLLOCK join with me in this dissent.