Statement.

𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

WEBB'S TRUSTEE V. LYNCHBURG SHOE CO.

March 14, 1907.

1. BANKRUPTCY—*Transfer with Intent to Hinder, Delay and Defraud.*—
At common law a debtor might lawfully prefer one or more of
his creditors, in the absence of actual fraud, but equality is the
policy of the bankrupt law, and it is declared that all transfers
by the bankrupt within four months prior to the filing of his
petition in bankruptcy, made with intent and purpose on his
part to hinder, delay or defraud his creditors, or any of them,
shall be null and void as against the creditors of such debtor
except as to purchasers in good faith and for a present fair
consideration. The intent of the debtor need not be corrupt,
under section 67 (e) of the act, nor is it necessary that the credi-
tor preferred should share in the intent, but if any disposition
of his property is made by the bankrupt within four months
before the filing of his petition in bankruptcy, with the object
of defeating his creditors of their right to share equally in the
distribution of his assets, it should be considered as having been
made with intent to hinder, delay and defraud. The conversion
of practically the whole of the bankrupt's estate into money,
and the payment of that money to some of the creditors to the
exclusion of others a few days before the filing of a petition in
bankruptcy, constitutes a transfer of property within the mean-
ing of the Bankrupt Act, and whether the same was made with
intent to hinder, delay and defraud the creditors of the bank-
rupt should be submitted to the jury under all the evidence in
the cause.

Error to a judgment of the Corporation Court of the city of
Lynchburg in an action of assumpsit. Judgment for the de-
fendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*John H. Lewis, L. H. Cocke, H. T. Hall* and *Smith & King,* for the plaintiff in error.

*Wilson & Manson,* for the defendant in error.

KEITH, P., delivered the opinion of the Court.

Mrs. D. A. Webb was a retail shoe dealer in the city of Roanoke, the business being actually conducted, however, by her husband, S. B. Webb. On October 1, 1902, she sold her entire stock of goods and book accounts to D. R. Beale & Company for $7,500, without having made an inventory of her property. The proceeds of the sale were distributed as follows: To the George D. Witt Shoe Company the sum of $3,100; to the National Bank of Roanoke, Va., $2,000, and to the Lynchburg Shoe Company the sum of $2,000, in full of their respective debts; and the residue was paid in small sums upon debts due in Roanoke. She had no other assets, except a vacant lot and a small house, which were covered by a prior deed of trust, and which she turned over to the Southern Shoe Company of Roanoke, in satisfaction of its debt. After thus disposing of all her assets she still owed other creditors debts amounting to $5,864.47. On the 2d of October, 1902, she employed counsel to prepare for her a petition in bankruptcy. This petition was sworn to on October 4, 1902, it was filed on October 7, and on October 10 she was adjudicated a bankrupt. The proceedings in bankruptcy show that she had no assets except household goods amounting to $250, which she claimed as exempt.

James D. Johnston was appointed and qualified as trustee in bankruptcy, and he demanded of the Lynchburg Shoe Company the return of the $2,000 which had been paid to it. This demand was refused, and a suit was instituted for its recovery. There was a verdict and judgment for the defendant, and the record before us presents for our consideration questions which

arose during the trial and which were properly preserved by bills of exception.

The declaration contains three counts.  The first count is based upon section 60 (b) of the Bankrupt Act of 1898, upon the ground that the debtor had given the Lynchburg Shoe Company a preference, intended to prefer them, and that they had reasonable cause to believe a preference was intended.  The second and third counts are based upon section 67 (e) of the Bankrupt Act, which reads as follows: "That all conveyances, transfers, assignments or incumbrances of his property, or any part thereof, made or given by a person adjudged a bankrupt under the provisions of this act, subsequent to the passage of this act and within four mouths prior to the filing of the petition, with the intent and purpose on his part to hinder, delay or defraud his creditors, or any of them, shall be null and void as against the creditors of such debtor, except as to purchasers in good faith and for a present fair consideration."  The real controversy before us is as to the proper construction of this section.

After the evidence was introduced, counsel for plaintiff in error asked the court to give nine instructions, all of which were refused, as appears from bill of exception No. 2.  The defendant in error asked the court to give six instructions, all of which were given, and these are found in bill of exception No. 3.  As stated in the petition for a writ of error the effect of the instructions given was to strike out of the case the second and third counts of the declaration and confine the consideration of the jury to the first count.

While the instructions given and refused are numerous, the question for our consideration arises upon instruction No. 6, asked for on behalf of plaintiff in error and refused by the court, which is in these words:

"If the jury believe from the evidence that within four months prior to the filing of the petition in bankruptcy, with the intent on her part to hinder, delay or defraud her creditors,

or any of them, Mrs. D. A. Webb made a transfer of $2,000 of her property to the defendants, and that such transfer was not to purchasers in good faith and for a fair present consideration moving at that time, the said transfer is void, and they must find for the plaintiff."

The sixth instruction asked for by the defendant in error, and which was given by the court, is as follows:

"The court instructs the jury that there being no evidence of a corrupt intent on the part of Webb in making the payment, which the plaintiff seeks to recover in this case, but only of an intent to create a preference, there can be no recovery under the second and third counts of the declaration."

The issue then is sharply made, whether or not there must be affirmative evidence of a corrupt intent to enable the plaintiff to recover in this case, or whether (as plaintiff in error contends) it was enough for him to show that there was an intent on the part of the bankrupt to hinder, delay or defraud her creditors, or any of them, and that any evidence which showed an intent upon her part to defeat the operation of the Bankrupt Act and the rights of creditors to such an administration of the assets as was provided for by that Act, establishes within the meaning of section 67 (e) an intent to hinder, delay or defraud her creditors.

We think that there can be no doubt that the payment to the defendants of the $2,000 on the day before the filing of the petition in bankruptcy constituted a transfer of the property of the debtor, or a part thereof, within the meaning of the Bankrupt Act. We are further of opinion that in order to avoid that transfer and to recover in this action by force of section 67 (e) of the Bankrupt Act it was upon the trustee to prove, first, that the debtor had been adjudged a bankrupt under the provisions of the Act; second, that the transfer had been made after the passage of the Act and within four months prior to the filing of the petition; and, third, an intent and purpose on

the part of the bankrupt to hinder, delay or defraud her creditors, or any of them.

It is apparent that the first and second conditions are fully met, and it only remains to consider whether there is proof of the existence of an intent and purpose on the part of the bankrupt to hinder, delay or defraud her creditors, or any of them.

The mere fact that a transfer of property has been made by the bankrupt within four months prior to the filing of the petition in bankruptcy is not enough, for had that been the purpose of the law, it would have been sufficient to say that "all conveyances, transfers, assignments, or incumbrances of his property, or any part thereof, made or given by a person adjudged a bankrupt under the provisions of this act, subsequent to the passage of this act and within four months prior to the filing of the petition, shall be null and void as against the creditors of such debtor, except as to purchasers in good faith and for a present fair consideration." But Congress saw fit to require that the transfer should have been made under the conditions named, and with the condition superadded, that it was "with the intent and purpose on the part of the bankrupt to hinder, delay or defraud his creditors, or any of them."

A proper construction must give effect to the entire statute as it is written, and there can be no recovery under this section in the absence of proof of "intent and purpose" on the part of the bankrupt to hinder, delay or defraud his creditors. If all these conditions appear, including proof of such intent, the transfer is null and void as against the creditors of such debtor, except as to purchasers in good faith and for a present fair consideration. In the opinion of the trial court there was no evidence of a corrupt intent on the part of Webb in making the payment which the plaintiff seeks to recover, but only of an intent to create a preference, and therefore there could be no recovery under the second and third counts of the declaration, and appellant's instruction was refused.

In this view of the evidence we cannot concur. The controlling purpose of the Bankrupt Act is to secure the equal distribution of the debtor's property among his creditors. If the debtor gives a preference in derogation of the terms of the Act, and the creditor preferred had reasonable cause to believe that a preference was intended, it is void. *Johnson* v. *Witt Shoe Co.,* 103 Va. 611, 50 S. E. 153.

At common law a preference by the debtor among creditors was permitted; but if there was actual fraud on the part of the debtor in making a conveyance, assignment or transfer of his property, whether to a creditor or other person, and that fraudulent intent was shared by the grantee, assignee or transferee, it was void as intended to hinder, delay and defraud creditors. Under the Bankrupt Act such a transaction is void if made with intent to hinder, delay and defraud creditors, whether the creditor shares in such intent or not. The Bankrupt Act does not say in terms that there must exist a corrupt intent or purpose on the part of the debtor to hinder, delay and defraud his creditors in order to avoid the transfer; and under section 67 (e) it would seem that any disposition made by the bankrupt of his property within four months before filing his petition in bankruptcy, with the object of defeating his creditors of their right to share equally in the distribution of his assets, should be considered as having been made with intent to hinder, delay and defraud.

In Loveland on Law & Proc. in Bankruptcy, section 160, it is said: "In order to avoid a transfer under this provision three things must concur: First, the debtor must have been adjudicated a bankrupt under the provisions of this act; second, the transfer must have been made subsequent to the passage of the act and within four months prior to the filing of the petition; third, the existence of an intent and purpose on the part of the bankrupt to hinder, delay or defraud his creditors, or any of them. If any of these elements are wanting the transfer can not be avoided under this provision.   .   .

"An assignment for the benefit of creditors is a familiar example of a transfer voidable under this section. In the absence of actual fraud an assignment for the benefit of creditors, though constructively fraudulent under the bankrupt act, is not void, but voidable, and is voidable only at the suit of the trustee in bankruptcy. Where the assignment is made within four months of the filing of the petition it may be set aside and the assignee compelled to deliver the property to the trustee in bankruptcy. The ground for avoiding such an assignment under the present act is that it delays and hinders creditors, for the reason that it puts his estate into a course of distribution different from that prescribed by the act."

It is true that the author here illustrates with a general assignment for the benefit of creditors; but in the case before us it appears that the debtor, in contemplation of bankruptcy and immediately before filing his petition, being insolvent, disposed of substantially the whole of her estate to certain creditors, to the exclusion of others, which would seem to be as plainly within the mischief intended to be cured by the statute as a general assignment would have been.

In construing section 60 (b) of the Bankrupt Act, in the case of *Johnson* v. *Witt Shoe Co., supra,* we held that at common law the giving of a preference by an insolvent creditor was not prohibited, and the preference there was sustained against the suit of the trustee in bankruptcy, because the creditor had no reasonable cause to believe that a preference was intended by the payment which was made to him, having no knowledge of any fact calculated to produce a belief in the mind of an ordinarily intelligent man that the debtor was at the time insolvent.

By section 70 of the Bankrupt Act all property transferred by the debtor in fraud of his creditors vested in the trustee in bankruptcy, and under that provision there must be proof of actual fraud. It is suits under that clause upon which ap-

pellee seems chiefly to rely. He cites Loveland on Bankruptcy, page 384, to the following effect: "Fraud is a necessary element to give the trustee in bankruptcy a right of action. Insolvency of itself, or the fact that the property conveyed constituted more in value than the grantor could rightfully withdraw from the reach of creditors, does not vest such a right of action in the trustee. The statute provides that the transfer shall be in fraud of his creditors." But here Loveland is discussing remedies under section 70.

So with *Warren* v. *Moody,* 122 U. S. 132, 30 L. Ed. 1108, 7 Sup. Ct. 1063. There the trustees in bankruptcy were appointed on the 28th of July, 1879, and filed their bill on the 25th of the same month attacking a conveyance made by the bankrupt on the 31st of December, 1866, acknowledged by the grantor on the 7th of October, 1867, and recorded on the 29th of March, 1872.

In *Metropolitan Nat'l Bk.* v. *Rogers,* 53 Fed. 776, 3 C. C. A. 666, the bill was filed on the 14th of December, 1877, and the conveyance which was attacked was dated July 8, 1872, and the petition in bankruptcy was not filed until November, 1875.

In appellee's authorities thus far considered none of the sections of the Bankrupt Act are involved which avoid transactions entered into within four months prior to filing the petition in bankruptcy. They were, as we have seen, under section 70, and under that section actual fraud, as understood at common law and in the state statutes upon the subject, must be established.

In *Githens* v. *Shiffler* (D. C.), 112 Fed. 505, it appears that property was sold by the insolvent for full consideration, which was paid in cash, and it was therefore held not to constitute a fraudulent transfer under the Bankrupt Act, although there was an intention on the part of the seller to use the proceeds in paying some creditors rather than others, and a small part of the proceeds was applied to the personal use of the seller,

the sale not in fact having been made for the purpose of placing property beyond the reach of creditors. "While," said the court, "a man may not connive with others to get his property out of the way by sale or otherwise, yet a fair and open disposition of it on a full consideration cannot be given a fraudulent character, although it may incidentally have the effect of leaving nothing which creditors can get hold of, and even though the debtor do this to meet some of his obligations rather than others."

In *Johnston* v. *Forsyth Mer. Co.* 127 (D. C.), Fed. 845, a bill by a bankrupt's trustee to set aside an alleged fraudulent conveyance of the bankrupt's assets alleged that just prior to the filing of the petition the bankrupt's chief assets consisted of a stock of merchandise worth $6,000; that the stock was fresh, and though a large part of the purchase price thereof remained unpaid, the bankrupt, while hopelessly insolvent, and known so to be by defendant, sold the stock to defendant at a price which was greatly below the market value of the merchandise; that the sale was conducted at night, with great secrecy, and in the morning before business hours the purchaser paid to one of the bankrupts $3,850 before an inventory had been taken, which was so hastily paid that $405.14 thereof had to be subsequently refunded; and that the sale was made to hinder and defraud the bankrupt's creditors, which was known to defendant. It was held that such allegations charged a fraudulent transfer with sufficient definiteness to withstand a demurrer. About that we think there can be no doubt.

The bare transfer within the stipulated period is not of itself sufficient, but is a circumstance to be considered by the jury along with all the other facts in evidence. In this case (without going into a discussion of the evidence in detail) we think the facts adverted to in the beginning of this opinion were such as to entitle the plaintiff in error to have a jury say whether Webb made the payment under consideration with intent to

hinder, delay or defraud her creditors, and that instruction 5, asked for by the plaintiff in error, should have been given.

*Reversed.*