## In re COMMERCIAL OPERATING CORPORATION.

### No. 368.

Circuit Court of Appeals, Second Circuit.

May 6, 1935.

Milbank, Tweed, Hope & Webb, of New York City (A. Donald MacKinnon and Arthur John Keeffe, both of New York City, of counsel), for appellant.

Paskus, Gordon & Hyman, of New York City (Arthur B. Hyman, Joseph C. Slaughter, and Charles H. Lieb, all of New York City, of counsel), for appellee.

Rabenold & Scribner, of New York City (Charles E. Scribner, of New York City, of counsel), for Palm Beach Co.

Simpson Thacher & Bartlett, of New York City (Whitney North Seymour and Frederick B. Lee, both of New York City, of counsel), for Financial Corporation.

Before MANTON, SWAN, and CHASE, Circuit Judges.

### PER CURIAM.

The order appealed from confirmed a special master's report which recommended the dismissal of appellant's specifications of objections and approved an offer of composition. July 25, 1933, the bankrupt transferred all its assets to Bonwit Teller, Inc., for 7,490 shares of the latter's no par value preferred stock and 7,490 shares of $5 par value common stock. Bonwit Teller, Inc., assumed the bankrupt's liabilities, except for $749,000 of One-Year Renewable 6 per cent. Subordinated Notes, and certain lease obligations.

On August 4, 1933, the bankrupt filed its voluntary petition in bankruptcy, and was duly adjudicated. An offer of composition provided for the sale at $5 per share of so many shares of the common stock of Bonwit Teller, Inc., as would be necessary to pay allowed claims other than the one-year notes, and for the distribution of the unsold shares to note holders in the amount of their claims, or, at their option, they might receive a 50 per cent. cash payment.

The bankrupt conducted a ladies' apparel store in New York City. It had expended a large amount of money for remodeling, and found itself pressed for working capital. Inventories were reduced to such an extent that large and continued losses were suffered because its stock was not sufficiently large to satisfy its customers. New capital, thus needed, could not be obtained because of an objectionable feature of the bankrupt's lease, a clause permitting cancellation by the landlord upon 90 days' notice. New capital was, however, forthcoming if that clause could be eliminated, and, if obtained, would permit the bankrupt to continue as a going concern. June 23, 1933, the elimination of the objectionable clause of the lease was found impossible, and the bankrupt's board of directors then voted to authorize a petition in bankruptcy. On June 30, 1933, a plan was proposed, and on July 5 was accepted by the board of directors. It provided for a transfer of the assets to a new corporation, and eliminated the necessity of bankruptcy. The special master found that the transfer was made without any intent to hinder, delay, or defraud creditors, but was made to secure $250,000 additional capital for the purpose of improving the business. The consequences of the transfer were found to be beneficial to all creditors.

The bankrupt was found not to be insolvent or in imminent danger thereof, and its credit was good. The plan of transfer and the filing of the petition in bankruptcy were in no wise related. The filing of the petition was only for the protection of its creditors. The sole question on this appeal is whether the transfer of assets was made with an intent to hinder, delay, or defraud creditors.

We think the transfer was not made with such an intent, nor did it hinder, delay, or defraud creditors. See In re Braus, 248 F. 55 (C. C. A. 2); Richardson v. Germania

Bank, 263 F. 320 (C. C. A. 2); Irving Trust Co. v. Chase Nat. Bank, 65 F.(2d) 409 (C. C. A. 2). No pronouncement in Shapiro v. Wilgus, 287 U. S. 348, 53 S. Ct. 142, 77 L. Ed. 355, 85 A. L. R. 128, is contrary to the principle announced in the cited cases in this circuit.

Order affirmed.